UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:20-cr-00017 |
| JAVON WHITLOCK, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**
(Doc. 26)

Pending before the court is Defendant Javon Whitlock's motion to suppress evidence obtained as a result of a March 30, 2019 warrantless, non-consensual search of a vehicle rented in Defendant's name. (Doc. 26.) Defendant argues that the search violated the Fourth Amendment to the United States Constitution because law enforcement lacked probable cause to search the vehicle. He further contends law enforcement did not have reason to believe that evidence of crimes for which his passengers were arrested would be found in a vehicle he rented and operated. On February 12, 2021, the government opposed Defendant's motion and Defendant replied on March 18, 2021. On March 19, 2021, the court held an evidentiary hearing, at which time the court took the pending motion under advisement.

Defendant is charged in a one-count Indictment with possession with intent to distribute 28 grams or more of cocaine base, a Schedule II controlled substance, and heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B); 18 U.S.C. § 2.

The government is represented by Assistant United States Attorney Nathanael T. Burris. Defendant is represented by Jared L. Olanoff, Esq., and Paul S. Volk, Esq.

**I.  Findings of Fact.**

The parties agree that there is no material dispute as to the facts which are derived

from the parties' briefs and police cruiser camera footage.

On March 21, 2019, a Drug Enforcement Administration ("DEA") investigation into drug trafficking between Massachusetts and Vermont resulted in an indictment charging Sir Michael James and Stephany Guerrero-Rodriguez with conspiracy to distribute heroin, cocaine base, and cocaine in February, 2019. A federal magistrate judge issued arrest warrants for Mr. James and Ms. Guerrero-Rodriguez. On March 26, 2019, the DEA obtained a search warrant for location data associated with a cellular phone number used by Mr. James.

On March 30, 2019, law enforcement, who were monitoring Mr. James's cell phone location data, observed that the phone was traveling north on I-91 near the Vermont-Massachusetts border. DEA Special Agent Timothy Hoffmann ("SA Hoffmann") contacted Vermont State Police ("VSP") Sergeant Richard Slusser to assist with the execution of the federal arrest warrants and requested that he stop the vehicle, which SA Hoffmann believed contained Mr. James and possibly Ms. Guerrero-Rodriguez. He also provided a description of Mr. James.

At 5:29 p.m., SA Hoffmann observed a black Nissan Sentra (the "Sentra") pass Exit 2 northbound on Interstate 89 in Vermont. Location data indicated that Mr. James's cellular phone was in the same area. SA Hoffmann relayed his observation to Sergeant Slusser, and at 5:37 p.m., Sergeant Slusser observed the Sentra pass the area of Exit 3 northbound on Interstate 89 with three occupants. He stopped the vehicle in the area of Mile Marker 27. Sergeant Slusser identified the driver as Defendant, and confirmed that Defendant had rented the Sentra in Massachusetts. The front passenger was identified as Mr. James and the rear passenger was identified as Ms. Guerrero-Rodriguez.

Sergeant Slusser told Defendant that he stopped him for going six miles per hour over the speed limit but that it was "not enough to write you a ticket for." (Doc. 29-4 at 1:44.) He asked for Defendant's license and registration. As he reviewed this documentation, he advised that he smelled "a little weed" and asked if the occupants had been smoking to which they replied that they had not. *Id.* at 2:24. Sergeant Slusser asked why he could smell weed if they had not been smoking and asked the occupants how

2

much marijuana they had to which Mr. James replied that he had seven grams. Sergeant Slusser told Mr. James that possession of marijuana was "decriminalized in the state" and that it was "not an arrestable offense," *id.* at 2:44, but that it had to be secured properly and that if he could smell it, it was probably not secured properly. Sergeant Slusser asked Mr. James to exit the vehicle, stating that he would need to see how much marijuana he had, but that he could lawfully possess up to an ounce. Sergeant Slusser asked Mr. James what pocket the marijuana was in. Mr. James replied that it was not in his pocket but was in the vehicle. Sergeant Slusser then placed Mr. James in handcuffs.

SA Hoffmann, a federal DEA agent, arrived on the scene and approached the Sentra, aiming a rifle at the front driver's side window. Mr. James, still in handcuffs, was placed in Corporal Mark Busier's police cruiser. Law enforcement officers removed Defendant and Ms. Guerrero-Rodriguez from the vehicle, handcuffed them both, and placed them in separate police cruisers. SA Hoffmann began searching the interior and trunk of the Sentra. He did not ask for consent before doing so. However, the search began only after Sergeant Slusser stated that he smelled marijuana and Mr. James admitted that he possessed it and that it was in the vehicle.

While SA Hoffmann searched the trunk of the vehicle, he stated that there was "weed in the car," to which Sergeant Slusser responded "we're not going to do anything with it." *Id.* at 8:16. Sergeant Slusser then showed SA Hoffmann Defendant's driver's license and SA Hoffmann stated, "I don't have anything on him." *Id.* at 8:40. SA Hoffmann informed Sergeant Slusser that he was "just going to toss this car real quick, see if we got anything in here." *Id.* at 9:09.

SA Hoffmann, Sergeant Slusser, and DEA Agent Brandon Hope searched the Sentra's trunk and interior for approximately seven minutes. Thereafter, SA Hoffmann read Mr. James his *Miranda* rights and Mr. James waived his rights and agreed to speak with SA Hoffmann. Mr. James stated that "the package" was near the Sentra's center console. Agent Hope subsequently removed a plastic panel under the Sentra's dashboard and below its stick shift and found approximately 221 grams of cocaine base and 2,100 bags of heroin contained in several socks, as well as 17.2 grams of marijuana.

3

Defendant was placed under arrest and transported to the VSP barracks where he spoke to SA Hoffmann and Special Agent Adam Chetwynd and gave consent to search his cellular phone.

## II. Conclusions of Law and Analysis.

### A. Whether Law Enforcement Unlawfully Seized Defendant.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" absent "probable cause, supported by oath or affirmation[.]" U.S. CONST. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "'[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.'" *United States v. Swindle*, 407 F.3d 562, 566 (2d Cir. 2005) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "In evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe*, 470 U.S. 675, 685 (1985).

Defendant contends that he was unlawfully seized when he was removed from his vehicle, placed in handcuffs, and detained in a police cruiser because law enforcement did not have an arrest warrant for him and Sergeant Slusser informed Defendant that he did not intend to write him a ticket. He argues that the officers therefore "had no justifiable grounds to prolong the stop by seizing and detaining" him. (Doc. 26 at 4.)

"[P]assengers and drivers have no Fourth Amendment interest in not being ordered out of [a] stopped vehicle[,]" *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000), because "an order to exit a vehicle during a lawful stop amounts only to a de minimis intrusion on [a defendant's] liberty." *United States v. Weaver*, 975 F.3d 94, 101

4

(2d Cir. 2020). However, "[o]nce the purpose of an ordinary traffic stop is completed, the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006) (internal quotation marks and citation omitted). Defendant's detention was thus lawful only if there was a constitutional justification for it beyond the initial traffic violation. *See Florida v. Royer*, 460 U.S. 491, 500 (1983) (holding that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"). The government offers two bases for Defendant's continued detention and the search of the Sentra. First, it argues that because law enforcement had arrest warrants for Defendant's passengers, the search of the Sentra was a search incident to their arrest and Defendant was properly detained while that search was underway. Second, the government argues that pursuant to the automobile exception, the smell of marijuana provided probable cause to search the vehicle and detain Defendant during its search.

**B.     Whether the Search of the Sentra was a Search Incident to Arrest.**

"Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* Pursuant to this exception:

> [p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Id.* at 351.

At the time of the search, Mr. James, Ms. Guerrero-Rodriguez, and Defendant were each handcuffed and seated in separate police cruisers and were therefore

5

unquestionably not in reaching distance of the Sentra's passenger compartment. The government nonetheless contends that the search of the Sentra was permissible because Mr. James and Ms. Guerrero-Rodriguez "were arrested pursuant to federal arrest warrants stemming from an Indictment charging them with federal drug crimes." (Doc. 29 at 4.)

Since the Supreme Court's ruling in *Gant*, courts have adopted divergent interpretations of the *Gant* Court's "reasonable to believe" standard. Some courts have interpreted it as creating a *per se* rule based on the crime of arrest so that "certain offenses will never provide an officer with reasonable belief that a car contains evidence of the offense, while other offenses always will." *State v. Ewertz*, 305 P.3d 23, 27 (Kan. Ct. App. 2013) (explaining the *per se* approach but not adopting it); *see also People v. Nottoli*, 199 Cal. App. 4th 531, 553 (2011) (holding that "*Gant* indicated that the nature of the crime of arrest was determinative" because it "requires reasonable possibility, not probability"). Other courts have rejected this approach, finding instead that *Gant*'s "reasonable to believe" standard is akin to reasonable suspicion.[1] A third group of courts have merely noted that the "reasonable to believe" standard is something less than probable cause. *See, e.g., United States v. Edward*, 769 F.3d 509, 514 (7th Cir. 2014) (holding that the automobile exception and the search incident to lawful arrest exception are "interrelated, but not identical" because although "[t]he Court in *Gant* did not elaborate on the precise relationship between the 'reasonable to believe' standard and probable cause . . . the Court's choice of phrasing suggests that the former may be a less

---

[1] *See, e.g., United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) (holding that "the 'reasonable to believe' standard probably is akin to the 'reasonable suspicion' standard required to justify a *Terry* search"); *People v. Chamberlain*, 229 P.3d 1054, 1057 (Colo. 2010) (holding that the *Gant* "Court's use of phrases like 'reasonable to believe' and 'reasonable basis to believe' is a further indication that it intends some degree of articulable suspicion, a standard which it has previously acknowledged in its Fourth Amendment jurisprudence as meriting official intrusion"); *Taylor v. State*, 137 A.3d 1029, 1033 (Md. Ct. App. 2016) (concluding "that the 'reasonable to believe' standard is the equivalent of reasonable articulable suspicion because we cannot discern any logical difference between the two"); *United States v. Taylor*, 49 A.3d 818, 824 (D.C. Ct. App. 2012) (finding that "in the absence of further guidance from the Supreme Court . . . officers must have reasonable, articulable suspicion to conduct a vehicle search under the second prong of *Gant*").

6

demanding standard"); *United States v. Polanco*, 634 F.3d 39, 42-43 (1st Cir. 2011) (noting that "the auto exception requires probable cause. But the *Gant* evidentiary justification only requires a 'reasonable basis.' These distinctions make a difference") (citations omitted).

The government appears to argue in favor of a *per se* rule whereby an arrest warrant for a drug crime itself provides reason to believe that evidence of that crime will be found in a vehicle whose location is detected by cell phone location data obtained for the purpose of making an arrest. Although this may be true for some cases, it conflicts with the *Gant* Court's observation that "[a] rule that gives police the power to conduct [] a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals." *Gant*, 556 U.S. at 345. Under *Gant*, law enforcement must instead articulate specific facts that support a reasonable belief that evidence of the crime of arrest will be found in the vehicle. *See United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) (finding that "the officer's assessment of the likelihood that there will be relevant evidence inside the car must be based on more than a mere hunch") (internal quotation marks and citation omitted).

Here, only Mr. James and Ms. Guerrero-Rodriguez were subject to federal arrest warrants. Their mere status as passengers in Defendant's vehicle, even if detected through cell phone location data, does not, without more, provide reason to believe that evidence of the alleged crime would be found in Defendant's vehicle. The Indictment charging Mr. James and Ms. Guerrero-Rodriguez with drug trafficking offenses contains no mention of Defendant or his involvement in their alleged criminal activity. It alleges criminal activity on or about February 22, 2019, one month prior to the traffic stop. Viewed collectively, the facts do not support a conclusion that evidence of Mr. James's and Ms. Guerrero-Rodriguez's alleged crimes would be found in a vehicle Defendant rented and operated a month after the Indictment. *See United States v. Taylor*, 49 A.3d 818, 826-28 (D.C. Ct. App. 2012) (finding that although "[i]t was, of course, *possible*, that evidence of drinking . . . would be found in the vehicle, just as it is possible that such

7

evidence may be found in any vehicle driven by an intoxicated individual[,]" the fact that the defendant was intoxicated and had the opportunity to hide evidence was insufficient to establish "reasonable, articulable suspicion that evidence of [driving under the influence] would be found" in his vehicle). As a result, neither the nature of the crime under investigation nor the circumstances of the traffic stop provided a reasonable belief that a search of the Sentra would yield evidence of the passengers' alleged crimes. Accordingly, the search of the Sentra was not a search incident to arrest under *Gant* because the arrestees ceased to have access to the passenger compartment at the time of the search.

### C. Whether there was Probable Cause for the Search of the Sentra.

"Although the Fourth Amendment generally requires police to obtain a warrant before conducting a search, there is a well-established exception for vehicle searches." *United States v. Jones*, 893 F.3d 66, 70 (2d Cir. 2018). "Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). "An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention." *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (internal quotation marks and citation omitted).

The Supreme Court has characterized probable cause as "a fluid concept" that is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The inquiry "turns on an 'assessment of probabilities' and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence." *United States v. Martin*, 426 F.3d 68, 76 (2d Cir. 2005) (quoting *Gates*, 462 U.S. at 235). However, "probable cause demands more than a 'mere suspicion' of wrongdoing," *Ganek v. Liebowitz*, 874 F.3d 73, 83 (2d Cir. 2017), and is instead "demonstrated where the totality of the circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks and

8

citation omitted).

The government asserts that the "DEA's investigation undoubtedly established probable cause to search the Sentra for evidence of James's and Guerrero-Rodriguez's drug crimes." (Doc. 29 at 8.) This "assumes that because probable cause existed to arrest [Mr. James and Ms. Guerrero-Rodriguez] . . . it follows *a fortiori* that [law enforcement] had probable cause to search the vehicle for evidence of that crime[,]" however, "[t]here may be probable cause to search without probable cause to arrest, and vice-versa." *United States v. Rodgers*, 656 F.3d 1023, 1028-29 (9th Cir. 2011). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (footnote omitted). Beyond the existence of arrest warrants for two of Defendant's passengers and cell phone location data for Mr. James, the government points to no facts that support probable cause that evidence of his passengers' alleged crimes would be found in Defendant's rented vehicle. Law enforcement was therefore not entitled to search the vehicle on this basis.

In the alternative, the government asserts that law enforcement had probable cause to search the Sentra after Sergeant Slusser smelled marijuana, even if he had no intention to arrest the Sentra's occupants on that basis. The smell of "marijuana emanating from a vehicle is sufficient probable cause to search a vehicle." *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015); *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013) (holding that "[t]he smell of marijuana in a vehicle can establish probable cause to search the vehicle for drugs"); *United States v. Trapp*, 2014 WL 1117012, at *11 (D. Vt. Mar. 20, 2014) (finding that "[t]he smell of marijuana provides probable cause to search a vehicle"). Although the possession of less than one ounce of marijuana has been decriminalized in Vermont, SA Hoffmann and Agent Hope, federal law enforcement officers, conducted the search.

Numerous courts have ruled that a state's legalization of possession of marijuana negates probable cause for state law enforcement officers to search a vehicle based on the

9

odor of marijuana.[2] Other courts have held that federal law enforcement officers relying on the odor of marijuana to establish probable cause are not prohibited from enforcing federal law and searching for evidence of marijuana merely because the state in which the search took place has decriminalized its possession.[3]

Because federal law has not decriminalized the possession of marijuana and because federal law enforcement officers conducted the search of the Sentra, Vermont's

---

[2] *See, e.g.*, *United States v. Martinez*, 811 F. App'x 396, 397 (9th Cir. 2020) *petition for cert. pending*, (20-7038, filed 1/29/21) (holding that, with respect to county police officers, a "district court erred by relying on pre-Proposition 64 cases that held that the odor of marijuana alone provides probable cause to search for violations of state marijuana laws" because Proposition 64 "legalized the possession of 28.5 grams or less of marijuana"); *United States v. Jones*, 438 F. Supp. 3d 1039, 1054 (N.D. Cal. 2020) (holding that "even if the [San Francisco Police Department] officers smelled unburned marijuana emanating from the [vehicle], that smell did not provide either reasonable suspicion or probable cause to believe that there was contraband in the [vehicle]"); *United States v. Maffei*, 417 F. Supp. 3d 1212, 1228 (N.D. Cal. 2019) (holding that where a city police officer smelled unburned marijuana and defendant indicated "that there was marijuana inside the [v]ehicle, and that he had a cannabis card . . . there was not a fair probability that contraband or evidence of a crime would be found in the [v]ehicle") (internal quotation marks omitted); *Scofield v. City of Detroit*, 2020 WL 5801219, at *6 (E.D. Mich. Sept. 29, 2020) (holding that "although [a city of Detroit police officer] testified that he smelled unburned marijuana when the passenger opened the car door to exit the [vehicle], [p]laintiff had informed the officer that he had a medical marijuana card and therefore his simple possession of marijuana would not provide probable cause for the search"). Some courts have emphasized that federal law criminalizing possession of marijuana cannot provide *state* law enforcement officers with probable cause to search a vehicle. *See United States v. Talley*, 467 F. Supp. 3d 832, 836 (N.D. Cal. 2020) (holding that the fact that possession of marijuana was a federal crime did not provide state law enforcement officers with probable cause to search a vehicle because "to permit this end-run around [the state's] legalization scheme would grant state law enforcement officers carte blanche to disregard the Fourth Amendment rights of large numbers of [state] residents engaging in activity the state has deemed lawful"); *Jones*, 438 F. Supp. 3d at 1054 (holding that "the [c]ourt is not persuaded by the government's arguments that notwithstanding the passage of Proposition 64, the [state law enforcement] officers could rely on the smell of marijuana alone to search the car because marijuana is illegal under federal law").

[3] *See, e.g.*, *United States v. Harrison*, 2018 WL 1325777, at *3 (D. Del. Mar. 15, 2018) (holding that "[t]he decriminalization of marijuana does not affect the court's reliance on well-established precedent that the smell of marijuana establishes probable cause" because "[e]ven if marijuana has been decriminalized in some instances in Delaware, every possession and usage of marijuana was not made legal" and Delaware's decriminalization "statute explicitly states that '[n]othing contained herein shall be construed to repeal or modify any law or procedure regarding search and seizure'").

decriminalization of marijuana in certain circumstances does not render DEA agents' search of the Sentra unlawful.

The smell of marijuana established probable cause for federal law enforcement's search of the Sentra under the automobile exception. Defendant could therefore be lawfully detained during the search. *See Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 612 (S.D.N.Y. 2013) (finding that "any detention incident to the lawful search of [the operator's] vehicle cannot give rise to a Fourth Amendment violation"). Defendant's motion to suppress evidence obtained as a result of that search is therefore DENIED.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion to suppress. (Doc. 26.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 16th day of April, 2021.

Christina Reiss, District Judge
United States District Court